UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| ANTHONY AVENATTI, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 2:20-cv-00354-JPH-MJD |
| ) | |
| GREE USA, INC., et al., ) | |
| ) | |
| Defendants. ) | |

**REPORT AND RECOMMENDATION REGARDING MOTION FOR SANCTIONS**

This matter is before the Court on Plaintiffs' Motion for Sanctions Against All Defendants [Dkt. 100]. On June 8, 2021, District Judge James Patrick Hanlon designated the undersigned Magistrate Judge to issue a report and recommendation regarding the disposition of the motion pursuant to 28 U.S.C. § 636(b)(1)(B). [Dkt. 104.] For the reasons set forth below, the Magistrate Judge recommends that Plaintiffs' motion be **GRANTED**.

**I. Background**

Plaintiffs allege in their Amended Complaint [Dkt. 19] that their home was destroyed by a fire that was caused by a dehumidifier that, on information and belief, was designed, manufactured, and sold by Defendants.[1] In 2013 and 2016, Defendants announced a series of recalls of certain dehumidifiers based on fire and burn hazards. Plaintiffs allege that Defendants

---

[1] Unless the identity of a particular Defendant is relevant to the issues before the Court at this time, the Court will use "Defendants" to refer generally to some or all of the Defendants in this case.

"each were aware of serious, life-threatening defects with the Recalled Dehumidifiers" but nonetheless "failed to ask retailers to issue a 'stop sale' of the products for several months" and that some of the Defendants intentionally slowed down the recall process. Plaintiffs allege that the dehumidifier that caused their fire was one of the dehumidifiers that was subject to the recall. Plaintiffs assert claims under the Indiana Product Liability Act, alleging both design and manufacturing defects as well as a failure to warn. They also assert claims for fraud, breach of implied warranty, and violation of the Magnuson-Moss Warranty Act. They seek compensatory and punitive damages, alleging that they

> each sustained physical harm, bodily injury, psychological injury, loss of income, loss of services, and sudden, catastrophic damage to property. Among other injuries, Ms. Avenatti sustained a broken ankle and other injuries as a result of the Fire for which she has received ongoing medical care. Her injury is permanent and disabling. Mr. Avenatti has sought medical treatment for his injuries, including but not limited to anxiety and depression.

[Dkt. 19 at 7.]

Plaintiffs served discovery requests on Defendants Gree USA, Inc., ("Gree USA"), Gree Electric Appliances Inc. of Zhuhai ("Gree Electric"), and Hong Kong Gree Electric Appliance Sales, Ltd. ("Gree Hong Kong"), (collectively "Gree") in September and October 2020, to which Gree responded on November 19, 2020. Finding Gree's responses to be deficient, on December 30, 2020, Plaintiffs filed a motion to compel Gree to provide complete responses. [Dkt. 49]. On February 9, 2021, Plaintiffs filed a motion to compel against the remaining Defendants, MJC America Ltd. and MJC America Holdings Co., Ltd. (collectively "MJC"), [Dkt. 60], arguing that their discovery responses also were inadequate.

On March 17, 2021, the Court entered an order granting both motions to compel. [Dkt. 72] (hereinafter "the Order"). While the Order was over twenty pages long, it can be

summarized quite succinctly: Defendants wholly failed to avail themselves of the opportunity to meaningfully object to Plaintiffs' discovery requests, choosing instead to make unsupported boilerplate objections and, in the case of MJC, to advance "some of the most stunningly meritless arguments the undersigned has seen in over a decade on the bench." *Id.* at 12. Therefore, the Court found that Defendants had waived all objections, ordered Defendants to provide complete and unequivocal supplemental responses to Plaintiffs' interrogatories and document requests within 28 days of the date of the order (by April 14, 2021), and admonished Defendants that "any failure to comply with this Order will subject Defendants to the full panoply of sanctions available to the Court pursuant to Federal Rule of Civil Procedure 37(b)(2)(A), up to and including default judgment." *Id.* at 20-21.[2] Defendants did not file an objection to the Order; nor did they move to extend the April 14, 2021, deadline.

Defendants served supplemental interrogatory responses and produced documents—but provided no formal written response to Plaintiffs' requests for production—on April 15, 2021. On May 5, 2021, the undersigned held a telephonic status and discovery conference to address Plaintiffs' concerns with the incompleteness of Defendants' supplemental discovery responses. It became apparent over the course of the conference that, despite their insistence that they had fulfilled their discovery obligations, Defendants had not even attempted to fully comply with the clear instructions in the Order. Accordingly, the Court authorized Plaintiffs to file the instant motion for sanctions.

---

[2] The Order also found that Plaintiffs were entitled to seek a fee award pursuant to Federal Rule of Civil Procedure 37(a)(5)(C). It appears that the parties have resolved the fee issue among themselves.

3

## II. Applicable Standard

Federal Rule of Civil Procedure 37(b)(2) provides that where, as here, a party fails to obey a discovery order, the court "may issue further just orders" that "may include the following":

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii) striking pleadings in whole or in part;
> (iv) staying further proceedings until the order is obeyed;
> (v) dismissing the action or proceeding in whole or in part;
> (vi) rendering a default judgment against the disobedient party; or
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

The rule makes the issuance of sanctions permissive, rather than mandatory, and "[d]istrict courts have broad discretion in supervising discovery, including deciding whether and how to sanction such misconduct, for they are much closer to the management of the case and the host of intangible and equitable factors that may be relevant in exercising such discretion." *Hunt v. DaVita, Inc.*, 680 F.3d 775, 780 (7th Cir. 2012) (citing *Park v. City of Chicago,* 297 F.3d 606, 614 (7th Cir. 2002) (finding no abuse of discretion in choice not to impose sanction for discovery failure); *Melendez v. Illinois Bell Telephone Co.,* 79 F.3d 661, 670-71 (7th Cir. 1996) (finding no abuse of discretion in choice to impose sanction for discovery failure)).

## III. Discussion

There is no dispute that Defendants failed to comply with the Order. Defendants' only argument is that their failure to comply was not egregious enough to justify the sanction of default judgment. Defendants are correct that dismissal or default judgment as a sanction pursuant to Rule 37(b)(2) is appropriate only if the court finds that a party's failure to comply

with a discovery order was due to "willfulness, bad faith, or any fault." *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 776 (7th Cir. 2016) (citing *Societe Internationale pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 212 (1958)). Defendants argue that their actions were neither willful nor in bad faith. Even if this were true, it ignores the fact that the sanction of default may also be appropriate upon a finding of "fault," which in this context "does not require a showing of intent, but presumes that the sanctioned party was guilty of 'extraordinarily poor judgment' or 'gross negligence' rather than mere 'mistake or carelessness.'" *Id.* (citations omitted).

There is simply no way that Defendants' behavior in this case can be characterized as mere mistake or carelessness. In fact, Defendants' approach to their discovery obligations embodies the "clear record of delay or contumacious conduct" that Defendants (incorrectly) argue is required to justify the ultimate sanction. *See* [Dkt. 106 at 3] ("Unless there is a clear record of delay or contumacious conduct, or when other less drastic sanctions have proven unavailing, a dismissal or default should not be ordered. *Webber v. Eye Corp.,* 721 F.2d 1067, 1069 (7th Cir. 1983); *Hindmon v. National-Ben Franklin Life Ins. Corp.,* 677 F.2d 617, 620 (7th Cir. 1982)").[3] This is most glaringly demonstrated by Defendants' continued insistence that they

---

[3] The Court notes that *Webber*, in which the "clear record of delay or contumacious conduct" language appears, involves a dismissal pursuant to Federal Rule of Civil Procedure 41(b), not a discovery sanction. *Hindmon*, which does involve a discovery sanction, applies the "willfulness, bad faith, or fault" standard. This is not an accident; motions under the two rules are subject to different standards. *See Brown v. Columbia Sussex Corp.*, 664 F.3d 182, 190 (7th Cir. 2011) ("The standards for dismissal under Rules 41(b) and 37(b) overlap, but there are differences between the two. Under Rule 41(b), a case should only be dismissed when there is a clear record of delay or contumacious conduct, or when other less drastic sanctions have proven unavailing. Rule 37, on the other hand, requires a finding of willfulness, bad faith or fault on the part of the defaulting party.") (internal citations and quotation marks omitted)).

have fulfilled their obligations to respond to Plaintiffs' document requests by producing wholesale the documents they produced in prior litigation between the two sets of Defendants, *MJC America, Ltd., et al., v. Gree Electric Appliances, Inc., of Zhuhai*, *et al.*, 2:13-cv-4264-SJO-CW (C.D. Cal.) (hereinafter "*MJC v. Gree*").

Plaintiffs assert in their opening brief that

> [n]one of the 5 Defendants has produced a single document that has come in response to *this* litigation. That is, each of the documents were either pulled from public records or websites by Defendants' attorneys or were received from attorneys who represented Gree in the *MJC v. Gree* matter. There is nothing in the record to indicate any of the Defendants have made any present-day effort to respond to it, either before or after the Court Order was entered in March 2021.

[Dkt. 101 at 8.] That Defendants do not deny this damning assertion in their response brief is telling. Instead, as to MJC, Defendants state that "MJC currently has one employee, does not generate profit or make or distribute products, and had no subsequent involvement, other than forwarding claims, with the Gree Defendants. MJC has no documents in its possession or control, other than what has already been produced here: the documents from the *MJC v. Gree* litigation." [Dkt. 106 at 2.] Given that fact, it is difficult to understand MJC's initial (boilerplate) undue burden and proportionality objection. Since well before this case was filed, MJC has had in its possession or control a delineated set of documents—those from *MJC v. Gree*—that it argues are "directly relevant" to this case. [Dkt. 106 at 4.] MJC does not even attempt to explain why it took over six months and a court order for it to produce those documents.

With regard to Gree, Defendants do not claim that Gree has no responsive documents beyond the *MJC v. Gree* documents; in fact, they concede, at least implicitly, that there are

6

additional responsive documents.  *See* [Dkt. 106 at 7] (stating that responsive information after the close of the *MJC v. Gree* case is "greatly limited").  Defendants state:

> Defendants provided written responses to Plaintiffs' Requests for Production, searching through both the Gree and MJC productions, identifying specific examples of responsive materials from both productions and listing same. Finally, a significant portion of Plaintiffs' interrogatories and document demands request information beyond 2016, the year the *MJC v. Gree* claim concluded. However, there are no responsive materials or information beyond 2016 related to a majority of these requests because Recalled Models were no longer manufactured after 2013.

[Dkt. 106 at 2.]  While Defendants argue that this "demonstrates that Defendants continue to make good faith efforts to comply with the Court's Order, and with Plaintiffs' demands," *id.* at 3, in fact in does the opposite.  What have Defendants done with regard to those requests for which there are post-2016 responsive documents?  What have Defendants done to search for any pre-2016 responsive documents that were not included in the *MJC v. Gree* document production?[4]  If any such efforts are now being undertaken, why were they not undertaken earlier?  Other than the vague claim that "Defendants are attempting to identify additional responsive materials to these requests but, to date, have been unable to do so," [Dkt. 106 at 7], the Court has searched Defendants' response brief in vain for the answers to these questions.

Defendants' arguments with regard to their interrogatory responses fare no better. Defendants spend much of their response brief attempting to demonstrate that Gree's second supplemental interrogatory responses demonstrate their good faith efforts to respond to discovery.  However, Gree's second supplemental responses were not served until June 11, 2021,

---

[4] Defendants do not, and, of course, cannot in good faith, argue that there is perfect overlap between the documents produced in that case and the documents that are responsive to the requests in this case.

7

in conjunction with Defendants' response to the instant motion.  While the second supplemental responses do appear to be an improvement over the prior responses, they are still not the complete and unequivocal responses ordered by the Court months ago.  *See* [Dkt. 108 at 14] (Plaintiffs providing "a small sampling of how the interrogatories remain, to this day, violative of the Court's March Order").  Had Defendants provided these responses in April, their assertion that they had made a good faith effort to comply with the Order may well have carried the day and avoided sanctions.  Putting forth that effort months later, and only in the face of a motion for sanctions, does not demonstrate good faith; rather, it suggests a desperate attempt to avoid the writing on the wall.

Defendants refused for months to take their discovery obligations seriously in this case. They still have not fully complied with the Order and have offered no explanation for why they have failed to do so.  They also provide no explanation for why they failed to provide the information contained in their second supplemental responses back in April, rather than months later in response to the instant motion.  *See* [Dkt. 108 at 4] (noting, correctly, that "not a single Defendant has filed even a single affidavit to contest the accusations in Plaintiffs' motion or, more simply, to explain for the Court the efforts any Defendant has made to comply with the Court's Order, just as they failed to provide affidavits on the proportionality factors when faced with the original motions to compel").  Indeed, the newly-provided information in the second supplemental responses includes the fact that "[a]fter further investigation, Defendant has confirmed the Subject Product is a recall model and amends its prior response.  Defendant does not dispute that the Subject Product was defective when originally sold to a consumer," [Dkt. 106-9 at 3], a key admission that fundamentally changes the scope of Plaintiffs' burden in this

8

case. If there is a reason why Defendants could not reasonably have been expected to make this admission months ago, they have failed to apprise the Court of that reason.

There is no question that Defendants' behavior satisfies the definition of "fault" set out in *Ramirez*, 845 F.3d at 776; Defendants are unquestionably "guilty of 'extraordinarily poor judgment' or 'gross negligence' rather than mere 'mistake or carelessness.'" Indeed, in light of the untenable positions taken by Defendants and their utter failure to provide any explanation for their dilatoriness, the Court is left with the firm conviction that Defendants' failure to comply with the Order was willful. Defendants were duly warned that the failure to fully comply with the Order would result in sanctions, up to and including default, and the Court finds that the sanction of default judgment is appropriate at this time.

### IV. Conclusion

For the reasons set forth above, the Magistrate Judge **RECOMMENDS** that Plaintiffs' motion for sanctions [Dkt. 100] be **GRANTED** and the sanction of default judgment be imposed on Defendants. If this recommendation is adopted, Plaintiffs will also be entitled to an award of fees for the filing of their motion for sanctions. In that event, Plaintiffs shall file a motion for fees no later than **14 days from the date this Order is adopted**.

In addition, while "[a] default judgment establishes, as a matter of law, that defendants are liable to plaintiff on each cause of action alleged in the complaint[,] . . the allegations in the complaint with respect to the amount of the damages are not deemed true. The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 602 (7th Cir. 2007) (citation and internal quotation marks omitted). "Under the law of this circuit, judgment by default may not be entered without a hearing on damages unless the amount claimed is liquidated

or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits." *Id.* (citations and internal quotation marks omitted). Accordingly, if this recommendation is adopted, no later than **21 days from the date this Order is adopted**, the parties shall confer and file a proposed plan for how the issue of damages will be resolved and a proposed schedule for completing any necessary discovery and other work necessary to bring this case to a close.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

SO ORDERED.

Dated: 26 JUL 2021

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on all
ECF-registered counsel of record via email
generated by the Court's ECF system.